J-S21037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
v.             :
:
:
:
NATHANIEL MENCY BOOTH       :
:
Appellant      :   No. 1291 MDA 2021

Appeal from the Judgment of Sentence Entered September 8, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004835-2020

BEFORE:  DUBOW, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:      **FILED:  JULY 26, 2022**

Nathaniel Mency Booth (Booth) appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County (trial court) following his bench conviction of strangulation for his choking of his wife, Crystal Bethea-Booth (Bethea-Booth).[1]  Booth challenges the sufficiency of the evidence supporting his conviction and the trial court's reliance on two documents Bethea-Booth signed at the time of the incident that he claims constitute inadmissible hearsay.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2718(a)(1).

**I.**

This case arises from an October 2020 domestic dispute in which Bethea-Booth called 911 and screamed without words into the telephone. At the May 13, 2021 bench trial, the Commonwealth called Officer Jonathan Pirkle of the Harrisburg Bureau of Police and Bethea-Booth as witnesses.

Officer Pirkle testified that on October 6, 2020, at 10:45 a.m., he responded to the 911 call from the Booth residence. When he arrived at the home, Bethea-Booth was visibly distraught and was "breathing very heavily, yelling, just a general look of being very distressed." (N.T. Trial, 5/13/21, at 8). Bethea-Booth was initially resistant to Officer Pirkle entering the home, but she eventually permitted him access. She explained that a verbal argument between the couple became physical when: "the aggression from Mr. Booth increased and this turned into him placing both his hands around her neck and pushing her down into a piece of furniture. At one point during this, Ms. Booth stated that the pressure was enough that she could not breathe at all. After that, she was thrown to the floor and Mr. Booth's hands were placed around her neck a second time, at which time he stated, and I'll quote, I'll kill you bitch." (*Id.* at 10). Booth fled from the residence before police arrived.

Although Officer Pirkle did not observe visible injuries to Bethea-Booth's person, he noted that she periodically had difficulty breathing and her voice was raspy. Bethea-Booth reported a lasting pain in her neck, but she

repeatedly declined the officer's offer to arrange for medical treatment. Bethea-Booth provided Officer Pirkle with a signed written statement detailing the altercation and she answered the questions he read to her from a strangulation questionnaire routinely used in domestic disputes. Officer Pirkle gave Bethea-Booth information as to how to secure a protection from abuse (PFA) order, which she indicated she would seek.

On cross-examination, Officer Pirkle testified that he did not know if Bethea-Booth obtained a PFA and that he never spoke to Booth about the incident. The officer explained that his attempts to follow up with Booth were unsuccessful because he did not have accurate contact information for him.

Bethea-Booth recounted that she resides with her husband and on the day of the incident she: "was off my medication. I'm bipolar, schizophrenia. Like, I'm on my medication now. I get real paranoid. I think things are happening to me. Like we argue, but when I get emotional, I think something is happening to me. My head's telling me it is." (*Id.* at 17). Bethea-Booth testified that she called 911 during the episode and that it was her voice on the phone call recording, but that she does not remember making this call. Bethea-Booth did remember that during the incident, "[Booth] was trying to leave, and I didn't want him to leave. So he was trying to pull away and I didn't want him to." (*Id.* at 18).

Bethea-Booth further testified that she does not recall telling Officer Pirkle that she had an argument with her husband or that he used his two

hands to choke her, nor does she remember providing a written statement or answering the questions on the strangulation questionnaire. When the Commonwealth showed her the written statement, Bethea-Booth reiterated that she did not recall writing it and said: "when I'm off my medication I don't remember[.]" (*Id.* at 20). However, she did acknowledge that the statement was written in her handwriting and that her signature is on both the written statement and on the bottom of the questionnaire. Bethea-Booth elaborated on her memory lapses by advising that she suppresses nightmares by drinking alcohol and smoking marijuana.

On cross-examination by defense counsel, Bethea-Booth advised that she is 54 years old and that she has been on medication all of her life for bipolar schizophrenia. When she does not take her medication as indicated, she sometimes experiences hallucinations "where [she] believes something is occurring but it is not occurring." (*Id.* at 25). During these episodes, she does not remember what is happening at the time. Bethea-Booth averred that she does not remember talking to the police on the day of the incident, that the information contained in the written statement and strangulation questionnaire is not true, and that "[Booth] wouldn't do that to me. He never does that to me. He never hit me." (*Id.* at 26). She testified that there is no abuse in her marital relationship and that Booth takes care of her with respect to her mental health issues. Bethea-Booth refused medical attention

on the day of the incident because she had no injuries and she did not subsequently seek a PFA order.

When the Commonwealth moved for admission of Bethea-Booth's written statement as Exhibit 2 and the strangulation questionnaire as Exhibit 3, defense counsel objected because Bethea-Booth was not able to identify or remember these documents. (*See id.* at 21-22, 31). The trial court admitted the documents over objection and explained:

> We're satisfied that the appropriate foundation under the rule has been established. It has been testified by the officer that they were filled out in close temporal timetable with the event in question. He said they were signed. She acknowledged her signature, as well as the writing on the actual statement. So despite her alleged inability to recall today, I think they are admittable, and therefore will admit them.

(*Id.* at 31-32).

At the conclusion of trial, the court convicted Booth of strangulation. In doing so, the court found that Bethea-Booth "appears to be selective about what she remembers and what she doesn't remember. She conveniently remembers supposedly her husband leaving and her not wanting him to leave but doesn't seem to remember anything that occurred where she initially said there was a problem." (*Id.* at 34). The court also noted that the questions included in the strangulation questionnaire were very specific and Officer Pirkle testified that he wrote Bethea-Booth's responses down verbatim, after which she reviewed and signed it.

The trial court deferred sentencing for preparation of a pre-sentence investigation report. On September 8, 2021, it sentenced Booth to a term of 1½ to 5 years of incarceration. Booth timely appealed and he and the trial court complied with Pa.R.A.P. 1925. *See* Pa.R.A.P. 1925(a)-(b). In its Rule 1925(a) opinion, the trial court explained that it admitted Bethea-Booth's written statement and the strangulation questionnaire pursuant to Pennsylvania Rule of Evidence 803.1(4) as Prior Statements by a Declarant-Witness Who Claims an Inability to Remember the Subject Matter of the Statements[2] and specifically found "Ms. Bethea-Booth's claimed inability to remember not credible." (Trial Court Opinion, 12/09/21, at 8; *see also id.* at 7-9).

## II.

On appeal, Booth contends the evidence was insufficient to support his conviction of strangulation.[3] He points to Bethea-Booth's written statement

---

[2] Rule 803.1(4) allows for the admission of a prior statement by a declarant-witness who claims an inability to remember the subject matter of her statement under circumstances where the court finds her claimed inability to remember not credible. *See* Pa.R.E. 803.1(4), *infra*.

[3]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by

*(Footnote Continued Next Page)*

and the strangulation questionnaire as unfairly bolstering the Commonwealth's case because these documents constituted inadmissible hearsay. Booth contests the trial court's application of Rule 803.1(4) as grounds for admission of these exhibits where there is no evidence that Bethea-Booth feigned her inability to recall the documents, and the evidence instead reflects that her memory lapse was consistent with psychosis. (**See** Booth's Brief, at 12-13, 19-20).

The Crimes Code provides that "a person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by: (1) applying pressure to the throat or neck[.]" 18 Pa.C.S. § 2718(a)(1). Notably, infliction of physical injury to a victim is not an element of the offense, nor is lack of injury a defense to a strangulation charge. **See id.** at § 2718(b).

_____

the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Fitzpatrick***, 159 A.3d 562, 567 (Pa. Super. 2017), *appeal denied*, 173 A.3d 255 (Pa. 2017) (citation omitted).

With regard to Booth's claim that the Commonwealth's case was unfairly bolstered by its use of inadmissible hearsay, Rule 802 provides that, "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Pa.R.E. 801(c). A "statement" is an oral or written assertion. *See* Pa.R.E. 801(a).

As previously noted, Rule 803.1 serves as an exception to the general rule against hearsay. Under this Rule, a prior statement offered to impeach a witness may also be admitted as substantive evidence if it meets additional requirements of reliability. *See Commonwealth v. Enix*, 192 A.3d 78, 81 (Pa. Super. 2018). Subsection 4 of this Rule directly addresses the circumstances present in the instant case, where the declarant-witness claims an inability to remember the content of the prior statements at all. It provides:

> The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
>
> \*     \*     \*
>
> **(4) Prior Statement by a Declarant-Witness Who Claims an Inability to Remember the Subject Matter of the Statement**. A prior statement by a declarant-witness who testifies to an inability to remember the subject matter of the statement, unless the court finds the claimed inability to remember to be credible, and the statement:

*    *    *

(B) is a writing signed and adopted by the declarant[.]

Pa.R.E. 803.1(4)(B) (effective April 1, 2017).

Under this Rule, the trial court must, as an initial matter, make a credibility determination concerning a witness's claimed inability to remember the content of a written statement in determining its admissibility.  The Comment to the Rule explains:  "The purpose of this hearsay exception is to protect against the 'turncoat witness' who once provided a statement, but now seeks to deprive the use of this evidence at trial.  It is intended to permit the admission of a prior statement given under demonstrably reliable and trustworthy circumstances, when the declarant-witness feigns memory loss about the subject matter of the statement."  **Id.**, Comment (case citation omitted).

Instantly, the trial court rejected Booth's claim, stating:

> The testimony and evidence adduced at trial, together with all reasonable inferences derived therefrom, is sufficient to sustain the conviction of strangulation.  Officer Pirkle testified that Ms. Bethea-Booth had told him on the day of the incident that she and Appellant had got into a verbal argument that escalated.  He further testified that Ms. Bethea-Booth informed him that Appellant put both of his hands around her neck at least two (2) times to the point she was unable to breathe and threw her to the ground.

> *    *    *

> As the fact-finder, this Court had the benefit of hearing the testimony from Officer Pirkle and Ms. Bethea-Booth, as well as the ability to observe the demeanors of all interested parties.  As previously stated, this Court did not find Ms. Bethea-Booth's

attempt at recantation to be credible. Additionally, this Court finds that the written statement was written under reliable circumstances, and Ms. Bethea-Booth was cross-examined on her prior inconsistent statements at the bench trial. Since the prior inconsistent statement meets the additional requirements of reliability, it was offered as substantive evidence. Accordingly, the evidence presented at trial, along with all reasonable inferences derived therefrom, is sufficient beyond a reasonable doubt to sustain the conviction of strangulation.

(Trial Ct. Op., at 6, 8).

After review of the record, we agree with the trial court's finding that the documents at issue were prepared under demonstrably reliable circumstances and that they were signed and adopted by Bethea-Booth. Although Bethea-Booth testified that she did not remember making the written statement or answering the strangulation questionnaire, she verified that her signature was at the bottom of each document. *See Enix*, *supra* at 82 (finding that statement to police that had been reduced to writing and signed by witness is reliable and trustworthy). Booth was free to contest the reliability of the written statement and questionnaire, which defense counsel did through extensive cross-examination of Bethea-Booth highlighting her mental health and memory issues she attributed to lack of compliance with her medication regimen, coupled with her pattern of self-medication. The record also supports the trial court's credibility determination that Bethea-Booth was feigning her memory loss concerning the exhibits at trial, which it made as fact-finder after listening to her testimony, coupled with that of

Officer Pirkle and observing their demeanors, as it was free to believe "all, part or none of the evidence" presented. *See Fitzpatrick*, *supra* at 567.[4]

In sum, the record reflects that Bethea-Booth's written statement and responses to the strangulation questionnaire fell squarely within the ambit of Rule 803.1(4) and were properly admitted into evidence by the trial court. Further, the evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, provides ample support for Booth's conviction of strangulation despite his wife's purported inability to recall the incident.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/26/2022

---

[4] We acknowledge Booth's argument contesting application of Rule 803.1 because Bethea-Booth's inability to remember the documents "does not automatically make the statement[s] **inconsistent**." (Booth's Brief, at 14; emphasis original) (citing Rule 803.1(**1**), which governs Prior Inconsistent Statements of Declarant-Witness). However, the trial court did not apply this subsection in admitting the documents and instead relied on subsection (4), which specifically covers a declarant-witness's claimed memory loss.